# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Nan R. Nolan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 96 C 7351 | DATE | 3/28/2001 |
| CASE TITLE | Geraldine L. Rendler vs. Corus Bank, N.A. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Defendant Corus Bank's Motion for Summary Judgment as to Count II of the Complaint [117-1] is granted and Plaintiff's Cross-Motion for Summary Judgment on Count II [129-1] is denied. Judgment is entered in favor of defendant and against plaintiff class.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | 2 number of notices | |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | MAR 2 9 2001 date docketed | |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | 44 |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| | courtroom deputy's initials KMc | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

GERALDINE L. RENDLER, )
on behalf of herself and all )
others similarly situated )
)
Plaintiff, )
)
v. ) Case No. 96 C 7351
)
) Magistrate Judge Nan R. Nolan
CORUS BANK, N.A., formerly )
known as AETNA BANK, N.A., )
formerly known as BELMONT )
NATIONAL BANK OF CHICAGO )
)
Defendant. )

DOCKETED
MAR 2 9 2001

## MEMORANDUM OPINION AND ORDER

In this class action, the named plaintiff Geraldine L. Rendler charges that Defendant Corus Bank, NA. ("Corus Bank") violated the Truth in Lending Act ("TILA" or the "Act"), 15 U.S.C. § 1632(a), and Regulation Z, 12 C.F.R. §§ 226.17, by providing two loans, one for a home equity line of credit and one for a traditional note, and two disclosure statements in connection with the financing or refinancing of a single purchase of residential real estate. The case is before the Court on cross-motions for summary judgment. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons explained below, Corus Bank's Motion for Summary Judgment as to Count II of the Complaint [#117] is GRANTED and Plaintiff's Cross-Motion for Summary Judgment on Count II [#129] is DENIED.

144

# I. FACTUAL BACKGROUND[1]

Plaintiff Geraldine L. Render ("Rendler") owns a condominium in Chicago, Illinois. Rendler's Local Rule 56.1(b)(3)(A) Statement ¶ 1. Defendant Corus Bank is a national association with offices in Chicago, Illinois. Id. ¶ 2. Prior to November 20, 1995, Rendler applied to Corus Bank for financing to purchase a condominium. Id. ¶ 12. On November 20, 1995, Corus Bank loaned Rendler $53,200. Id. ¶ 13. Corus Bank loaned Rendler this money under its "80/20" program pursuant to which Rendler entered into an adjustable rate note secured by a first mortgage and a home equity line of credit, with a term of seven years, secured by a second mortgage. Id. ¶ 14. Rendler's first mortgage had an original principal amount of $44,800. Id. ¶ 15. Her line of credit provided for a maximum credit amount of $8,400. Id. At the closing on November 20, 1995, Rendler borrowed the full amount on her home equity line and applied that money towards the purchase of her condominium. Corus Bank's Reply to Rendler's Local Rule 56.1(b)(3)(B) Statement ¶ 1.

During the periods of time relevant to the allegations of the complaint, Corus Bank regularly issued loans to borrowers pursuant to its 80/20 program. Corus Bank's Reply to Rendler's Local Rule 56.1(b)(3)(B) Statement ¶ 2. Under the 80/20 program, a customer seeking to finance more than 80% of the purchase price of real estate was offered two loans: first, a fully amortizing note for 80% of the property's value and second, a home equity line of credit with a term of seven years for the balance of up to 20% of that value. Id. Each loan was secured by a separate mortgage against the property to be purchased. Id. The entire line of credit under the home equity line of credit agreement was usually disbursed at the time the loan was closed. Id. ¶ 10.

---

[1] The following facts are taken from the parties' Local Rule 56.1 Statements and are undisputed unless indicated otherwise.

Prior to the adoption of its 80/20 program, Corus Bank offered financing in excess of 80% of the value of property on the condition that the borrower would purchase private mortgage insurance. Corus Bank's Reply to Rendler's Local Rule 56.1(b)(3)(B) Statement ¶ 4. Corus Bank adopted the 80/20 program in response to customer complaints regarding paying the costs associated with private mortgage insurance. Id. Corus Bank offered the 80/20 program as opposed to merely financing the entire amount of the purchase price through the use of an adjustable rate note because it did not want the risk associated with providing adjustable rate notes which exceed 80% of the value of the property. Id. ¶ 5. Corus Bank also decided to offer the 80/20 program because it believed it would be profitable. Id ¶ 7. At the time Rendler applied for financing to purchase her condominium, Corus Bank did not offer a full amortizing first mortgage loan for an amount in excess of 80% of the value of the property to be purchased. Id. ¶ 8.

The Court has certified a class of borrowers who sought and received loans from Corus Bank under its 80/20 program. Each of the class members financed or refinanced in excess of 80% of the purchase price or value of their home. Each member of the class received a fully amortizing mortgage loan for 80% of the purchase price or value of their home and a home equity line of credit for the balance. Each class member received a separate TILA disclosure for the mortgage loan and the home equity line of credit.

## II. ANALYSIS

Federal Rule of Civil Procedure 56 mandates the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-

moving party, a reasonable jury could return a verdict for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). "A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial." <u>Id.</u> at 256.

The purpose of TILA and its implementing regulation is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a); <u>Williams v. Chartwell Fin. Servs.</u>, 204 F.3d 748, 757 (7th Cir. 2000) (stating that the goal of TILA is to "allow[] consumers to accurately compare credit rates."). TILA has separate disclosure requirements for "open-end" credit and "closed-end" credit. <u>Binion v. Bank One, Dayton, N.A.</u>, 144 F.3d 1056, 1057 (7th Cir. 1998). An open-end credit plan "is a financing plan under which the creditor 'reasonably contemplates repeated transactions,'" such as legitimate credit-card credit and revolving credit. <u>Id.</u> "Closed-end credit" is defined as "consumer credit other than open-end credit." 12 C.F.R. § 226.2(a)(10). The disclosure requirements for closed-end credit are more onerous and include stating the total finance charge. <u>Binion</u>, 144 F.3d at 1057.

Rendler maintains that Corus Bank violated TILA and Regulation Z by issuing two loans, one for a home equity line of credit and one for a traditional note, and two TILA disclosures in connection with the financing or refinancing of a single purchase of residential real estate. The home equity line of credit Rendler received to purchase her condominium was structured as an open-end credit plan, and she received the mandatory disclosures for an open-end credit plan. Rendler received the more comprehensive closed-end credit disclosures in connection with her traditional note used to finance 80% of the condominium's value. Rendler concedes that the disclosures provided pertaining to the

first mortgage would have been proper had there been no second mortgage and the disclosures pertaining to the second mortgage would have been proper had there been no first mortgage. Rendler's Local Rule 56.1(b)(3)(A) Statement ¶ 16.

Rendler argues, however, that Corus Bank's 80/20 program violates TILA because borrowers cannot look at a single piece of paper and see the total finance charge they will pay to acquire or refinance their homes, or a single number representing the annual percentage rate ("APR"). For example, in Rendler's case, she would have to calculate the effect of borrowing $8,400 at an APR of 13.25% and $43,947.49 at an APR of 8.61%. A combined APR is not provided, and there is no one number Rendler can compare with the APR offered by other lenders. According to Rendler, it would be difficult for her and the average consumer to determine whether another lender's offer of the full $52,400 at 9.1% is more favorable to Corus Bank's offer. Rendler also points out that the first mortgage disclosure states a dollar amount of the finance charge for that part of the financing, but there is no numerical finance charge provided for the second mortgage.

Rendler has not presented, and the Court has been unable to locate, anything in the Act or Regulation Z which prohibits a lender from simultaneously entering into two loans, one a closed-end credit transaction secured by a first mortgage and the other an open-end credit transaction secured by a second mortgage, and issuing separate TILA disclosures for each loan in connection with the financing or refinancing of a purchase of residential real estate. Since the Act has separate and distinct disclosure requirements for each type of transaction, neither the Act nor its regulation appears to permit, let alone require, a lender to issue a combined disclosure statement and a single APR in a situation where a closed-end credit transaction and an open-end credit transaction are used to finance or refinance the purchase of residential real estate. See In re Gillespie, 110 B.R. 742, 747-48 (Bankr. E.D. Pa. 1990) (holding HUD violated TILA by collapsing two distinct notes and mortgages into one

transaction and consolidating the disclosures).

Rendler claims that by issuing two loans for one underlying purpose and failing to consolidate the disclosures and provide a single APR, Corus Bank violated the rule contained in 12 C.F.R. § 226.17(a) that the required disclosures, including the APR, be made "clearly and conspicuously" and "grouped together." Rendler fails to acknowledge that section 226.17(a) applies only to closed-end credit transactions. Section 226.17(a) does not mandate that the required disclosures for a closed-end credit transaction be "grouped together" with the required disclosures for an open-end credit transaction where two such loans are simultaneously issued for a single underlying purpose. Rather, "for each [closed-end] transaction," the required disclosures shall be "grouped together" and "segregated from everything else" and "not contain any information not directly related to the disclosures required." 12 C.F.R. §§ 226.17, 226.18. With respect to open-end credit plans secured by a consumer's dwelling or home equity plans, Regulation Z requires that disclosures be made "clearly and conspicuously" and "grouped together and segregated from all unrelated information" 12 C.F.R. § 226.5b. Given sections 226.17(a) and 226.5b mandate that disclosures for each type of transaction be "segregated from everything else" and "segregated from all unrelated information," Corus Bank's conduct appears entirely consistent with TILA and its regulation.

None of the cases cited by Rendler establish that Corus Bank's 80/20 program violated TILA. In contrast to <u>Marshall v. Security State Bank</u>, 121 B.R. 814 (C.D. Ill. 1990), and <u>Shepeard v. Quality Siding & Window Factory</u>, 730 F.Supp. 1295 (D. Del. 1990), where one lender failed to provide a required disclosure (the security interest) and the other lender failed to provide all required disclosures at the time the transaction was consummated, it is undisputed that Corus Bank timely provided all the required disclosures on November 20, 1995 when the transactions between Rendler and Corus Bank were consummated.

In addition, In re Buckles, 189 B.R. 752 (Bankr. D. Minn. 1995), cited by Rendler, and the other decisions involving "loan splitting" are easily distinguishable. "Loan splitting" occurs when "the debtor wants, requests and expects to get a single loan consummated in a single transaction, but the lender instead documents and makes disclosures for the loan as if it were two separate transactions." Harris v. Illinois Vehicle Premium Finance Co., 2000 WL 1307513, *2 (N.D. Ill. Sept. 12, 2000); see also In re Buckles, 189 B.R. 752 (Bankr. D. Minn. 1995) (holding creditor violated TILA's requirement that mandatory disclosures be "grouped together" when it ignored debtor's request for one loan and split off several components of the cost of extending credit and issued two loans and two disclosure statements); Hemauer v. ITT Financial Services, 751 F. Supp. 1241 (W.D. Ky. 1990) (holding lender violated TILA by splitting the charges surrounding one loan into two loans executed on the same day where consumer sought only one loan); see also Morequity, Inc. v. Naeem, 118 F.Supp.2d 885 (N.D. Ill. 2000); Harris, 2000 WL 1307513 (N.D. Ill. Sept. 12, 2000); Vance v. National Benefit Association, 1999 WL 731764 (N.D. Ill. 1999).

Rendler concedes that the relevant issue here is not whether the class members expected to receive one or two loans. Rather, Rendler claims that Corus Bank's 80/20 program which provides up to 100% financing for residential acquisitions or refinancings by a conventional mortgage loan for 80% of the purchase price and a separate home equity line of credit for up to the remaining 20% is a per se violation of TILA, even if the borrower wanted and expected to enter into two loans. Regardless of the correctness of the "loan splitting" decisions (which the Court need not decide), it is clear that the foundation for their determinations does not exist here. Loan splitting focuses on whether the borrower expected to enter into more than one credit transaction, and the failure of the present class definition to address the issue of the borrowers' expectations is fatal to a loan splitting claim. None of the loan splitting cases prohibit a lender from issuing more than one loan to finance or refinance a

home when the expectations of the borrower are not frustrated.[2]

### III. CONCLUSION

For the reasons set forth above, Corus Bank's Motion for Summary Judgment as to Count II of the Complaint [#117] is GRANTED and Plaintiff's Cross-Motion for Summary Judgment on Count II [#129] is DENIED. The Clerk is directed to enter judgment, pursuant to Fed. R. Civ. P. 58, in favor of Defendant and against Plaintiff class.

ENTER:

Nan R. Nolan
United States Magistrate Judge

Dated: 3/28/2001

---

[2] Rendler also relies on Clay v. Johnson, 22 F.Supp.2d 832 (N.D. Ill. 1998), in support of her claim that Corus Bank should have combined the disclosures for the open-end credit transaction and the closed-end credit transaction in one document. In Clay, the parties executed three retail installment contracts and mortgages on February 11, 1995, July 10, 1995, and July 15, 1995 to finance the purchase of home improvements, the remodeling of a bathroom and basement, and the remodeling of a kitchen and other improvements respectively. Each contract contained a "Federal Truth-In-Lending Disclosure Statement." The district court held, in relevant part, that the defendants violated section 226.17 by failing to provide the required disclosures in a single document. The reasoning of the Clay decision is unpersuasive for two reasons. First, the Clay court relied on the Shepeard and Marshall cases which this Court has found distinguishable from the instant case. Most importantly, the Clay court failed to cite to any provision in the Act or its regulation which prohibited the defendants from entering into three separate contracts and mortgages for home improvements and remodeling on three occasions over a six month period and issuing three separate TILA disclosures as opposed to combining all disclosures in one document.